E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
ANNE C. GANNON
Assistant United States Attorney
Chief, Orange County Office
CHARLES E. PELL (Cal. State Bar No. 210309)
Assistant United States Attorney
Orange County Office
     United States Courthouse
     411 West Fourth Street, Suite 8000
     Santa Ana, California  92701
     Telephone:  (714) 338-3542
     Facsimile:  (714) 338-3561
     E-mail:    charles.e.pell2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | No. **8:24-cr-00137-JWH** |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT KEVIN TIEN DO |
| v. | |
| KEVIN TIEN DO, | |
| Defendant. | |

**FILED**
CLERK, U.S. DISTRICT COURT

12/06/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: ____E.C.____ DEPUTY

1. This constitutes the plea agreement between KEVIN TIEN DO ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of health care fraud against the state of California. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities. This agreement is subject to approval by the Tax Division, United States Department of Justice.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 1349 (count one), and Subscribing to a False Tax Return, in violation of 26 U.S.C. § 7206(1) (count two).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   At or before the time of sentencing, make a prejudgment payment by delivering a certified check or money order to the Fiscal Clerk of the Court in the amount of $100,000 to be applied to satisfy defendant's anticipated criminal debt.  Payments may be

2

made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

i.    Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

j.    Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

k.    Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

l.    Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3.    Defendant further agrees:

a.    To the entry as part of defendant's guilty pleas of a personal money judgment of forfeiture against defendant in the amount of $306,111 which sum defendant admits was derived from proceeds traceable to the violations described in the factual basis of the

plea agreement.  Defendant understands that the money judgment of forfeiture is part of defendant's sentence, and is separate from any fines or restitution that may be imposed by the Court.

b.    With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal and equitable defenses to the money judgment of forfeiture in any proceeding on any grounds including, without limitation, that the money judgment of forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that entry of the money judgment of forfeiture is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

4.    Defendant admits that defendant received at least $78,854 of income for tax years 2021 and 2022 that he did not report on his own tax returns for those two years.  Defendant agrees that:

a.    Defendant will file, prior to the time of sentencing, amended returns for the years subject to the above admissions, correctly reporting unreported income; will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns; will pay to the Fiscal Clerk of the Court at or before sentencing all

4

additional taxes and all penalties and interest assessed by the Internal Revenue Service on the basis of the returns; and will promptly pay to the Fiscal Clerk of the Court all additional taxes and all penalties and interest thereafter determined by the Internal Revenue Service to be owing as a result of any computational error(s).  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

b.    Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant's returns after they are filed.

c.    Defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

d.    Defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of tax liability for tax years 2021, 2022, and 2023.

e.    Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

f.    Defendant will sign closing agreements with the Internal Revenue Service contemporaneously with the signing of this plea agreement, permitting the Internal Revenue Service to assess and collect the amount owed as determined by IRS for the defendant's tax years 2021, 2022, and 2023, which comprises the tax liabilities, as

well as assess and collect the civil fraud penalty for each year and statutory interest, on the tax liabilities, as provided by law.

g.   The parties believe that the remaining tax loss is $0, because defendant appears to have reported the missing income from tax years 2021 and 2022 on his 2023 tax return and paid it that year.

THE USAO'S OBLIGATIONS

5.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 24 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A, without regard to reductions in the term of imprisonment that may be permissible through the substitution of community confinement or home detention as a result of the offense level falling within Zone B or Zone C of the Sentencing Table.

NATURE OF THE OFFENSES

6.    Defendant understands that for defendant to be guilty of the crime charged in count one of the information, that is, Conspiracy to Commit Mail Fraud, in violation of Title 18, United States Code, Section 1349, the following must be true: (1) Beginning on or about October 2018, and ending on or about February 2023, there was an agreement between two or more persons to commit mail fraud, in violation of Title 18, United States Code, Section 1341; and (2) Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.  To commit the object of the conspiracy, that is, mail fraud in violation of Title 18, United States Code, Section 1341, the following must be true: (1) Defendant knowingly participated in a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts; (2) The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) Defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and (4) Defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

7.    Defendant understands that for defendant to be guilty of the crime charged in count two of the information, that is, Subscribing to a False Tax Return, in violation of Title 26, United States Code, Section 7206(1), the following must be true: (1) Defendant signed and filed a tax return for the year 2021 that he knew contained false information; (2) The return contained a written

7

declaration that it was being signed subject to the penalties of perjury; and (3) In filing the false tax return, defendant acted willfully.

PENALTIES AND RESTITUTION

8. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1341, is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7206(1), is: 3 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 23 years of imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

11. Defendant understands that defendant will be required to pay, and defendant agrees to pay, full restitution to the victim(s) of the offense to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is

8

pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty. The parties currently believe that the applicable amount of restitution is approximately $306,111 (to the State of California), but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

12.  Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the count of conviction and any relevant conduct; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.

13.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm,

9

the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license, such as defendant's license to practice medicine.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

15.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

16.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

At all times relevant to this Plea Agreement, defendant was a physician licensed to practice medicine in the state of California. In 2003, defendant was convicted of federal health care fraud, a felony violation of 18 U.S.C. § 1347, for which he was sentenced to 12 months of prison.  From around October 2018 to February 2023, within the Central District of California, defendant conspired with Co-Conspirator#1 to defraud the state of California of millions of dollars of health care funds, of which defendant received a total of approximately $306,000.  At all times while participating in their conspiracy to defraud, defendant acted with the intent to defraud, that is, the intent to deceive and cheat.

California's Subsequent Injuries Benefits Trust Fund (SIBTF) is a special fund administered by the California Division of Workers' Compensation (DWC), which is a division of the California Department of Industrial Relations (DIR), a California state agency responsible for administering and enforcing laws governing wages, overtime, workplace safety, and medical care and other benefits for injured workers.  The SIBTF provides additional compensation to injured

11

workers who already had a disability or impairment at the time of a subsequent injury.  The SIBTF exists to enable employers to hire disabled workers without fear of being liable for the effects of previous disabilities or impairments.  The SIBTF benefits are disbursed from an account controlled by the state of California that receives its funding from assessments on employers.

The process for filing a claim with the SIBTF has several steps: (1) the injured workers' compensation claim is settled or adjudicated; (2) the injured worker or their attorney mails an application of intent to seek SIBTF benefits to the SIBTF Unit; (3) the injured worker is evaluated by medical providers for his/her prior disability; (4) in addition to evaluating the injured worker, the medical providers review the injured worker's medical records and then generate a med-legal report; (5) the med-legal reports are mailed to the SIBTF Unit; (6) a claims examiner from the SIBTF Unit reviews the medical reports in conjunction with a DIR attorney and attempts to negotiate a settlement or denies the claim; (7) if the SIBTF claim is accepted, the injured worker and their attorney (if they are represented) will receive benefit payments by check via mail; and (8) if the SIBTF claim is denied, the injured worker or their attorney can appeal the decision to the California Workers' Compensation Appeal Board (WCAB).

In the SIBTF program, the medical providers could bill the SIBTF program for the evaluation of the injured workers, which evaluation the SIBTF program would use to determine whether the worker qualified for SIBTF program payments.  The medical providers who performed such evaluations of the injured workers would mail a bill via the United States Postal Service (USPS) to the SIBTF Unit in Sacramento,

California.  Such bills were submitted on Form 1500, entitled "HEALTH INSURANCE CLAIM FORM."  That form required the medical provider to list the rendering provider and his/her "RENDERING PROVIDER ID #" of the medical services and required the signature of the physician that certified, among other things, that the information on the claim form was true, accurate, and complete.  Typically, the attached multiple-page medical report (also referred to as a "med-legal report") generated by the medical provider would accompany the bill mailed to the SIBTF unit.  During the conspiracy to defraud, defendant worked at Liberty Medical Group Inc. (Liberty), which employed medical providers such as physicians, chiropractors, and psychologists to evaluate patients.

In November 2015, Liberty was incorporated as a medical corporation in California, listing its agent for service of process in Costa Mesa, California.  Under California law, shareholders/owners of a medical corporation must be licensed in the practice of medicine or other related medical fields, such as a psychologist, registered nurse, or licensed physician assistant.  In April 2016, defendant and Co-conspirator#1 opened a business bank account in the name of Liberty at Wells Fargo Bank, N.A.  In the bank account application/signature card, defendant was listed as the "Key Executive with Control of the Entity."  Defendant's position/title was listed as "PHYSICIAN" along with defendant's identifiers such as his social security number and birth date.  Co-conspirator#1 was listed as the "Signer" on the account application/signature card. Both defendant and Co-conspirator#1 wet-signed the bank account application/signature card.  Defendant signed that bank account application/signature card, even though he did not control Liberty,

13

which was in fact controlled by Co-conspirator#1.  Even though Liberty ultimately listed another doctor as Liberty's CEO and Director beginning in May 2019, defendant and Co-conspirator#1 did not remove defendant's name from Liberty's bank account.

Beginning in around October 2016, Liberty's medical providers, including defendant, generated medical reports related to the SIBTF program.  Beginning in around that same month, October 2016, Liberty would then mail those medical reports to the SIBTF and bill the SIBTF for med-legal evaluations.  From around December 2016 to around February 2023, the California SIBTF program paid Liberty more than $4.5 million from bills and medical reports that Liberty had mailed to the SIBTF.

After Liberty was formed and while defendant was working for Liberty, in around January 2017, California Labor Code Section 139.21 became operative in California.  California Labor Code Section 139.21(a)(1)(A) provided that the Administrative Director of the DWC "shall promptly suspend" any medical provider who had been convicted of a felony involving fraud or abuse of the Medicare, Medicaid, or Medi-Cal programs, or the California workers' compensation system. Accordingly, medical providers could be suspended from participating in California's workers' compensation system for a variety of reasons, which would include having a previous healthcare fraud conviction, like defendant had.  California Labor Code Section 139.21 also required that notification of such suspended providers would be posted on the department's Internet website.

On August 25, 2017, defendant was served with notice of his provider suspension pursuant to Section 139.21, based upon his 2003 federal health care fraud conviction.  Based upon that suspension,

14

defendant was prohibited from being involved or participating in any capacity in any aspect of California's workers' compensation system, which included the SIBTF program.  Such suspension proscribed any participation the SIBTF program, including rendering services, owning, or having an ownership interest in a medical corporation, being a medical director, compiling bills, submitting bills, consulting, and/or working in a medical director capacity, which defendant and Co-conspirator#1 both knew.

In April 2018, defendant emailed a copy of his formal suspension notice to Co-conspirator#1 at Co-conspirator#1's email address associated with Company#1, with subject line "Amended Notice from Workers Compensation."  That notice provided that in addition to his 2003 federal health care fraud conviction, defendant was also being suspended from participating in California's workers' compensation program under Section 139.21(a)(1)(B) "due to fraud or abuse from the Medi-Cal program."  Company#1's "Statement of Information" form filed with the California Secretary of State in 2017 listed Co-conspirator#1 as its CEO and its type of business as "Healthcare management."  Its statement of information filed in February 2021 listed Co-Conspirator#1's wife as the manager/member.  At the time Co-conspirator#1 was operating this fraudulent scheme with defendant, Co-conspirator#1 was employed as a prosecutor in the Orange County District Attorney's Office, until Co-conspirator#1 was seated as an Orange County Superior Court Judge.

Subsequent to receiving the notice of his suspension from the California workers' compensation system, defendant appealed his suspension to the California Workers' Compensation Appeals Board.  On October 3, 2018, a hearing was held on defendant's appeal, and on

15

October 10, 2018, a final decision issued, which affirmed defendant's suspension.  On October 19, 2018, the Administrative Director of the California DWC issued a final order that suspended defendant from participating in California's workers' compensation system.  That Order was provided to defendant by certified mail on October 19, 2018.  At that time, defendant told Co-conspirator#1 that he had lost his appeal and was thus indefinitely suspended from participating in California's workers' compensation system.

Defendant's suspensions from participating in various California state health care programs were also publicly available.  First, based upon his 2003 federal health care fraud conviction, defendant had previously been suspended from participating in the Medi-Cal program indefinitely, which was posted online in a list named "Suspended and Ineligible Provider List" on California's Medi-Cal website.  Second, defendant's suspension from participating in California's workers' compensation program was posted on California's DIR website, which listed the "Notice Issued" date of August 25, 2017, and "Suspension" date of October 19, 2018.  The DIR website had hyperlinks on the dates, which linked to a copy of defendant's suspension order dated October 19, 2018.  Defendant also discussed his suspensions with Co-conspirator#1, who had previously been aware of defendant's 2003 federal conviction for health care fraud, at the time defendant began to work for Co-conspirator#1 at Liberty.

Notwithstanding his suspension, which was finalized in October 2018, defendant continued to work for Liberty on workers' compensation matters.  Specifically, defendant continued to perform similar actions for Liberty that he had been doing before his suspension, including compiling and editing med-legal reports related

16

to the SIBTF program.  However, to conceal that defendant was continuing to participate in the SIBTF program, Co-conspirator#1 came up with a plan.  That plan was that defendant would continue to author the SIBTF-related reports, which Liberty would then continue to mail to the California SIBTF for payment.  However, rather than listing defendant's name on the billing form and the attached medical report reports mailed to the California SIBTF, like they had had done before his suspension, defendant and Co-conspirator#1 would instead list other doctors' names on the billing forms and attached medical reports, even though defendant had actually drafted and compiled the medical reports.  Co-conspirator#1 and defendant used other doctor's names on the billing forms and attached medical reports because they knew that if the SIBTF program knew that defendant was actually the physician who was authoring and compiling the reports that Liberty was submitting to the SIBTF program for payment, the SIBTF would not pay Liberty because defendant was a prohibited provider due to his 2018 suspension based upon his 2003 federal health care fraud conviction.  To further conceal defendant's continuing involvement with the SIBTF-related reports at Liberty, defendant stopped physically meeting with patients after his suspension, even though he had been meeting with patients before his suspension.

Liberty continued to pay defendant for his drafting, compiling, and editing med-legal reports related to the SIBTF program, even after defendant had been suspended from participating in that program.  Multiple checks from Liberty to defendant or one of his companies would list in the memo line the name of patients whose reports defendant had prepared and Liberty had mailed and billed to the California SIBTF.  Co-conspirator#1 signed those Liberty checks

17

payable to defendant.  For example, the memo line on a check from Liberty to defendant, dated August 4, 2020, lists the name of a patient (M.P.) whose medical report had been prepared by defendant. However, the medical report for patient M.P. that Liberty mailed to the California SIBTF in in June 2020 listed a  different doctor's name, even though defendant was the doctor who had in fact authored the report.

After defendant's suspension was finalized in October 2018, Co-conspirator#1 continued to pay defendant a total of more than $306,000 from Liberty, including approximately $78,796 in 2019, $134,890 in 2020, and $76,796 in 2021, which checks Co-conspirator#1 would routinely sign.  Those payments to defendant continued through at least late February 2023.  During those same years, Co-conspirator#1 caused Liberty to submit billings to the California SIBTF from Liberty, which included reports that defendant had prepared and compiled, but which was concealed by listing other doctors' names on the forms and reports.  For that same time period, California paid Liberty a total of more than $3 million for such SIBTF billings, including approximately $1.3 million in 2019, $1.2 million in 2020, $499,000 in 2021, and $141,000 in 2022.  Aside from the total of approximately $306,000 that Liberty had paid defendant during those several years, much of the more than $3 million that the SIBTF paid Liberty during those years then flowed to Company#1, which was controlled by Co-conspirator#1 and his wife, totaling more than $1.5 million.

Defendant would routinely communicate by email and text messages with Co-conspirator#1 about the SIBTF med-legal reports on which defendant was working, even though both of them knew that defendant

was prohibited from doing so (because defendant had been suspended from participating in that program), and that Liberty should not be mailing to SIBTF bills for any such reports done by defendant.  For example, in an email chain in late July 2019 (approximately one year after defendant had been suspended from participating in the SIBTF program), defendant and Co-conspirator#1 discussed what to write in medical reports of patients, where Co-conspirator#1 instructed defendant what to include in a medical report defendant had drafted, including directing defendant to: "Take a look at the notes in the margins."  Likewise, on August 8, 2019, defendant sent an email message to Co-conspirator#1 and Co-Conspirator#1's wife, with subject line "Report on [patient R.D.]," asking in the body of the email "I need to discuss about this case."  Further, in an email chain on May 12 and 13, 2021, defendant and Co-conspirator#1 discussed additional requirements for reports submitted to SIBTF, including that "SIBTF is requiring substantive proof than an evaluating physician personally review all medical records."   When in the email chain defendant asked Co-conspirator#1 "Should I do something like this from now on??", Co-conspirator#1 answered: "I think that's a good idea.  The regulations ask for it."  Co-conspirator#1 would also direct defendant to make edits on the reports being submitted to the SIBTF for payment, some of which contained false statements.

To conceal that defendant continued to work for Liberty after he had been suspended in 2018, on May 3, 2019, Liberty filed a "Statement of Information" with the California Secretary of State, which listed a different doctor in Rancho Cucamonga, California, as Liberty's purported CEO and Director, but with the same agent for service of process in Costa Mesa, California.  Even though Liberty

had been required to file such Statements of Information after Liberty had been incorporated in 2015, Liberty failed to file any such Statements of Information in 2016, 2017, or 2018.  Likewise, some of the payments from Liberty to defendant after the date of defendant's suspension were made payable to an entity that defendant used, instead of in defendant's name.  For example, in a text message from Co-conspirator#1 to defendant, dated March 22, 2022, Co-conspirator#1 wrote: "We received checks for [front doctor's name] work.  [Defendant's nominee company name] okay ro [sic] send payment to?"  That same day, March 22, 2022, Liberty issued checks payable to defendant's nominee company for $1,368.17 and $1,316.33, which Co-conspirator#1 signed and which listed the patient's names in the checks' memo lines.

Even though not a doctor or other medical professional, and thus prohibited under California law from having an ownership in a medical corporation, Co-conspirator#1 was the de facto owner of Liberty and completely controlled Liberty, including signing the checks from Liberty to defendant.  Co-conspirator#1 also hired other physicians and employees of Liberty and signed checks from Liberty to other doctors and employees.  Defendant knew that having a person like Co-conspirator#1 who was not a doctor or other medical professional own and operate a medical corporation like Liberty was against the law, and that if the SIBTF knew that were the case, SIBTF would not have paid for any of the claims that Liberty was mailing to them.

Defendant used a special skill, that is, his knowledge and experience as a medical doctor and medical report writer to facilitate the commission of the fraudulent conspiracy.

On defendant's federal income tax return for tax year 2021,

which he signed and filed with the IRS on or about June 1, 2022, defendant failed to report approximately $66,227 in income that Liberty had paid him by checks payable to an LLC during 2021, which was income to defendant.  Defendant signed his 2021 federal income tax return, which contained a written declaration that it was being signed subject to the penalties of perjury.  When filing that false tax return, defendant acted willfully, that is, defendant knew federal tax law imposed a duty on him, and defendant intentionally and voluntarily violated that duty.  Defendant ultimately reported the 2021 and 2022 income from Liberty on his 2023 tax return and paid tax on it when filing his 2023 tax return in 2024.

The parties agree that for purposes of this plea agreement, the applicable loss amount for Guidelines purposes from defendant's participation in this conspiracy to defraud the state of California is approximately $306,111, which is the amount of scheme funds Liberty paid to defendant for reports he drafted after he had been suspended from participating in the California SIBTF program.

SENTENCING FACTORS

17.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds

21

appropriate up to the maximum set by statutes for the crimes of conviction.

18. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Mail fraud conspiracy (count one)

| | | | |
|---|---|---|---|
| Base offense level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| $250k < loss < $550k: | +12 | U.S.S.G. § 2B1.1(b)(1)(G) |
| Violation of admin order: | +2 | U.S.S.G. § 2B1.1(b)(9)(C) |
| Use of special skill: | +2 | U.S.S.G. § 3B1.3 |

False tax return (count two)

| | | | |
|---|---|---|---|
| Base offense level: | 12 | U.S.S.G. § 2T1.1(a)(1), 2T4.1(D) |
| >$10k criminal proceeds: | +2 | U.S.S.G. § 2T1.1(b)(1) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

19. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

21. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.   The right to persist in a plea of not guilty.

    b.   The right to a speedy and public trial by jury.

    c.   The right to be represented by counsel -- and if

necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTIONS</u>

22.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

23

WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

23.  Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, including, to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the amount and terms of any restitution order, provided it requires payment of no more than $600,000; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

24.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of convictions.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

25.  This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

RESULT OF WITHDRAWAL OF GUILTY PLEAS

26.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

28.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations

25

are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

29.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any

evidence derived from the statements should be suppressed or are inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

### OFFICE NOT PARTIES

30.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

31.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

32.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the

maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

33.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

34.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____          11.26.24
CHARLES E. PELL                            Date
Assistant United States Attorney
Orange County Office

_____          11/19/2024
KEVIN TIEN DO                              Date
Defendant

_____          Nov 19, 2024
ELIOT F. KRIEGER                           Date
Attorney for Defendant
KEVIN TIEN DO

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or

29

representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          11/19/2024
KEVIN TIEN DO                             Date
Defendant


                   CERTIFICATION OF DEFENDANT'S ATTORNEY

     I am KEVIN TIEN DO's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          Nov 19, 2024
ELIOT F. KRIEGER                          Date
Attorney for Defendant
KEVIN TIEN DO

                                  30

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Mail Fraud; 26 U.S.C. § 7206(1): Subscribing to a False Tax Return; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 26 U.S.C. § 7301: Criminal Forfeiture] |
| KEVIN TIEN DO, | |
| Defendant. | |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1349]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Defendant KEVIN TIEN DO was a licensed physician in the state of California.

2.   Co-Conspirator#1 was a licensed California attorney until late 2022, when seated as an Orange County Superior Court Judge, but Co-Conspirator#1 was not a physician or other medical professional.

3.   Liberty Medical Group Inc. (Liberty) was a medical

Exhibit A

corporation incorporated in November 2015 in California.  Under California law, shareholders/owners of a medical corporation must be licensed in the practice of medicine or other related medical fields, such as a psychologist, registered nurse, or licensed physician assistant.

4.   California's Subsequent Injuries Benefits Trust Fund (SIBTF) is a special fund administered by the California Division of Workers' Compensation (DWC), which is a division of the California Department of Industrial Relations (DIR), a California state agency responsible for administering and enforcing laws governing wages, overtime, workplace safety, medical care and other benefits for injured workers.  The SIBTF provides additional compensation to injured workers who already had a disability or impairment at the time of a subsequent injury.  The SIBTF exists to enable employers to hire disabled workers without fear of being liable for the effects of previous disabilities or impairments.  The SIBTF benefits are disbursed from an account controlled by the state of California that receives its funding from assessments on employers.  In 2023, the total assessments for the SIBTF was more than $480 million.

5.   In 2003, defendant DO was convicted of federal health care fraud, a felony violation of 18 U.S.C. § 1347, for which he was sentenced to 12 months of prison.

6.   On or about October 19, 2018, the Administrative Director of the California DWC issued a final order that suspended defendant DO from participating in California's workers' compensation system, which included the SIBTF.  Defendant DO received that Order by certified mail on or about October 19, 2018.

7.   These Introductory Allegations are incorporated into all

2

counts of this Information.

B.    OBJECT OF THE CONSPIRACY

8.    Beginning on an unknown date but no later than on or about October 19, 2018, and continuing through at least in or around February 2023, in Orange, Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendant KEVIN TIEN DO and Co-Conspirator#1, together with others known and unknown to the United States Attorney, knowingly conspired to commit mail fraud, in violation of Title 18, United States Code, Section 1341.

C.    THE MANNER AND MEANS OF THE CONSPIRACY

9.    The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

a.    Defendant DO would draft and prepare medical-legal reports for Liberty, which Liberty would then mail to the California SIBTF with billing forms, requesting payment.

b.    Co-Conspirator#1 would own, operate, and control Liberty, a medical corporation, even though under California law, Co-Conspirator#1 was not allowed to do so, because Co-Conspirator#1 was not a physician or other medical professional.

c.    Defendant DO and Co-Conspirator#1 would conceal from the California SIBTF that Co-Conspirator#1 was the actual owner of Liberty by using defendant DO as the front doctor.

d.    Notwithstanding his October 2018 suspension from participating in California's workers' compensation program, which included the SIBTF program, defendant DO would continue to work for Liberty on workers' compensation matters, including drafting and preparing SIBTF-related medical-legal reports.

3

e.    To conceal that defendant DO was continuing to work on SIBTF-related reports, defendant DO and Co-Conspirator#1 would stop listing defendant DO's name on the reports or the forms that Liberty mailed to the California SIBTF for payment.

f.    Instead, defendant DO and Co-Conspirator#1 would list other doctors' names on those reports and forms mailed by Liberty to the California SIBTF for payment, even though defendant DO was the actual doctor who was authoring the reports.

g.    Defendant DO, Co-Conspirator#1, and others known and unknown to the United States Attorney would communicate by text and email messages about the fraudulent conspiracy, including the substance of SIBTF-related reports that defendant DO was authoring after the date of his suspension from participating in California's workers' compensation program.

h.    Co-Conspirator#1 would hire other physicians and employees of Liberty and would sign checks from Liberty to other doctors and employees, including to defendant DO.

i.    Liberty would pay defendant DO a total of more than $300,000 for drafting and preparing SIBTF-related medical reports after the date he had been permanently suspended from participating in California's workers' compensation program.

D.    OVERT ACTS

10.   On or about the following dates, in furtherance of the conspiracy and to accomplish the object of the conspiracy, defendant DO, Co-Conspirator #1, and others known and unknown to the United States Attorney committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including the following:

4

Overt Act No. 1:   In around April 2016, defendant DO and Co-Conspirator#1 opened a business bank account in the name of Liberty at Wells Fargo Bank, N.A., over which Co-Conspirator#1 had signature authority.

Overt Act No. 2:   On or about July 28, 2019, defendant DO and Co-Conspirator#1 discussed in an email message what to write in medical reports of patients, including Co-Conspirator#1 making notes in the proposed medical report that defendant DO had drafted.  In that email message, Co-Conspirator#1 directed defendant DO: "Prophylactic preclusions (retroactive) don't work unless there is substantial evidence to support them.  However, if a patient has labor disabling restrictions that are pre-existing, I would point to what restrictions they had, even if their job was not affected at the time.  The patient could have been working through such a restriction, but once they left that job, the patient could not compete in the labor market.  Take a look at the notes in the margins."

Overt Act No. 3:   On or about August 8, 2019, defendant DO sent an email message to Co-Conspirator#1 and Co-Conspirator#1's wife, with subject line "Report on [patient R.D.]," wherein in the body of the email, defendant DO wrote "I need to discuss about this case."

Overt Act No. 4:   On or about August 4, 2020, Co-conspirator#1 issued and signed a check from Liberty payable to defendant DO with memo line listing the name of a patient (M.P.) whose medical report had been prepared by defendant DO, which Liberty mailed to the SIBTF program seeking payment.

Overt Act No. 5:   On or about May 12 and 13, 2021, in an email

message chain, defendant DO and Co-Conspirator#1 discussed additional requirements for reports being submitted to the SIBTF, including that "SIBTF is requiring substantive proof than an evaluating physician personally review all medical records."  In that email chain, defendant DO asked Co-Conspirator#1 "Should I do something like this from now on??", to which Co-Conspirator#1 answered: "I think that's a good idea.  The regulations ask for it."

Overt Act No. 6:    After the date of defendant DO's October 2018 suspension from participating in California's workers' compensation program, from around January 2019 through February 2023, Liberty submitted more than 650 bills to the California SIBTF, many of which included reports authored by defendant DO but which listed other doctors' names, which caused California to pay Liberty a total of more than $3 million for SIBTF billings, including approximately $1.3 million in 2019, $1.2 million in 2020, and $499,000 in 2021.

COUNT TWO

[26 U.S.C. § 7206(1)]

11.  On or about June 1, 2022, in Los Angeles County, within the Central District of California, defendant KEVIN TIEN DO willfully made and subscribed to a materially false U.S. Individual Income Tax Return, Form 1040, for defendant DO for tax year 2021, which was verified by a written declaration from defendant DO that it was made under the penalties of perjury, and which defendant DO filed with the Internal Revenue Service, knowing the tax return was not true and correct as to every material matter contained therein, in that the tax return failed to report approximately $66,227 in income.

7

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this Information.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)  all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

8

FORFEITURE ALLEGATION TWO

[26 U.S.C. § 7301 and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, 7301, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count Two of this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property sold or removed by the defendant in fraud of the internal revenue laws, or with design to avoid payment of such tax, or which was removed, deposited, or concealed, with intent to defraud the United States of such tax or any part thereof;

(b) All property manufactured into property of a kind subject to tax for the purpose of selling such taxable property in fraud of the internal revenue laws, or with design to evade the payment of such tax;

(c) All property whatsoever, in the place or building, or any yard or enclosure, where the property described in subsection (a) or (b) is found, or which is intended to be used in the making of property described in subsection (a), with intent to defraud the United States of tax or any part thereof, on the property described in subsection (a);

(d) All property used as a container for, or which shall have contained, property described in subsection (a) or (b);

(e) Any property (including aircraft, vehicles, vessels, or draft animals) used to transport or for the deposit or concealment of

9

property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a); and

(f)   To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in this paragraph.

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//
//

10

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

E. MARTIN ESTRADA
United States Attorney


MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

ANNE C. GANNON
Assistant United States Attorney
Chief, Orange County Office

CHARLES E. PELL
Assistant United States Attorney
Orange County Office

11